UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


COMPUWARE CORPORATION,

        Plaintiff,

                                            Civil No. 03-70247
                                            Hon. John Feikens

        v.

MOODY'S INVESTORS SERVICES,
INC.,

        Defendant.

_____/


**OPINION AND ORDER**

        Defendant Moody's Investors Services (Moody's) moves for summary judgment on both

the defamation and breach of contract counts brought by Plaintiff Compuware Corp.

(Compuware).  At my direction, Defendant's motion is limited to the issue of whether

Compuware can show the required element of actual malice, and for the purpose of this motion, I

assume that Compuware can successfully show all other elements, including that the statements

in dispute meet the legal requirements for falsity.  Compuware argues that it can provide

sufficient evidence of actual malice to survive summary judgment, or in the alternative, that

actual malice is not the proper standard.  For the reasons below, I GRANT Moody's motion.

**FACTUAL BACKGROUND**

        In 1999, Plaintiff Compuware formed a contract worth approximately a quarter of a

million dollars with Defendant Moody's to publish a credit rating, and Plaintiff now alleges that

the rating was defamatory and constituted a breach of contract.[1]  In particular, the rating dealt

with Plaintiff's ability to repay borrowings that might be made from a $500 million revolving

bank facility.  On August 13, 2002, Defendant issued the Rating Opinion Report (the publication

at issue in this case), downgrading Plaintiff's credit rating from Baa2 to Ba1.  These two ratings

are two steps apart on the ratings scale.  Baa2 is the second lowest of the ten "investment grade"

ratings issued by Moody's.  (Pl.'s Br. at 4 n. 3.)  Ba1 is the highest of the junk status ratings.

Although the parties offer a great deal of detail on the history of the relationship and

communications between the two companies, I believe the only facts necessary to decide this

motion are those describing the parties' exchanges between August 9, 2002, when Moody's e-

mailed a draft of the rating at issue to Compuware for its review, and August 13, 2002, the date

of the rating's publication.  Both parties agree on all facts below unless otherwise noted.

A little after 1 p.m. on Friday, August 9, 2002, Moody's lead analyst for the Compuware

rating, John Moore, e-mailed Compuware with an exact copy of the press release and rating that

Moody's planned to publish.  (Pl.'s Br., Ex. P.)  Laura Fournier, Compuware's Chief Financial

Officer, was away and was not able to review the document until that Monday.  Id.

The draft sent to Fournier contained the following paragraph, which was unchanged in

the final release:

> "Moody's acknowledges that Compuware has a good balance
> sheet with no funded debt and cash and equivalents of $270
> million and liquid investments of $139 million as of quarter ended
> June 30, 2002.  The company also has a $500 million undrawn
> bank facility, which matures in August 2003.  Moody's expects the
> company will continue to remain in compliance with the financial

---

[1] I dismissed the other two counts of the Complaint.  Compuware Corp. v. Moody's
Investors Servs., Inc., 273 F.Supp.2d 914 (E.D.Mich. July 23, 2002).

2

covenants of this facility."  (Compl. Ex. A.)

According to Fournier, when she had reviewed the rating, she called Moore and said, "Come on, John, we have no debt.  We don't plan to use this [bank facility].  We aren't going to use this thing.  We have enough money in the bank to pay it off if we use the entire thing, which we don't plan to do."  (Fournier Dep. at 55-6.)  She then offered to terminate the facility, and says Moore told her that would not make a difference.  Id. at 56, 171.  She could not recall making any other "specific comments," and instead, focused on criticizing the overall rating. (Id. at 168.)

Moore's version of these exchanges is slightly different.  He could not recall how many conversations he had with Fournier, but noted that she had asked for a minor correction, the removal of the word Tivoli from the sentence identifying "IBM Tivoli" as a source of competitive pressure for Compuware.[2]  (Moore Dep. at 194.)  Moore said that Fournier made no other comments or corrections, and he did not recall a discussion of possible termination of the bank facility.  Id. at 39, 195.

The publication Moody's released regarding Compuware on Tuesday August 13, 2002 did not contain the word "Tivoli", but was otherwise identical to the publication sent to Compuware the preceding Friday.  (Pl.'s Resp. Ex. 12.)[3]

_____

[2]Although Fournier did not recall making the correction, she agreed that the correction came from Compuware.  (Fournier Dep. at 173-5.)

[3]I note that although Defendant and Plaintiff submitted differently formatted versions of their final publication in their briefs regarding this motion, and although Plaintiff submitted a copy of the rating that contained the word "Tivoli" with their Complaint, First Amended Complaint, and Response to the Motion to Dismiss, both parties stipulate that the version of the rating Moody's published to third parties is that contained in Exhibit 12 of Plaintiff's Brief in Response to this motion. (Conf. Memo., May 9, 2005.)

**PROCEDURAL BACKGROUND**

I have issued a number of opinions and orders in this case, of which three are relevant in my consideration of this motion.  The first, which I refer to as the 2002 opinion, decided Defendant's motion to dismiss.  Compuware Corp. v. Moody's Investors Servs., Inc., 273 F.Supp.2d 914 (E.D.Mich. 2002).  In it, I dismissed two of Plaintiff's claims, but left the breach of contract claim and the defamation claim intact.

I issued another opinion in this case on June 10, 2004 in response to discovery motions from both sides.  Compuware Corp. v. Moody's Investors Services, Inc., 222 F.R.D. 124 (E.D.Mich. 2004) (hereinafter, the June 10 opinion).  In the June 10 opinion, it was necessary to state the reasons I had not dismissed the defamation and breach of contract counts.  Id. at 127. The June 10 opinion held that to succeed on either count, Compuware would have to demonstrate that Moody's acted with actual malice or reckless disregard for the truth.  Id.

For the defamation count, that determination was based on the finding that Moody's was a public figure and hence the standard set forth in New York Times v. Sullivan applied.  376 U.S. 254 (1964).  For the breach of contract count, I reasoned that the Supreme Court has applied First Amendment protections beyond the traditional libel, slander, and defamation causes of action to other causes of action that have a publication at their center, and therefore the standard of actual malice would apply to the contract count as well.  I further noted that I found the case of County of Orange v. McGraw Hill Co.s, Inc., 245 B.R. 151, 154 (C.D. Cal. 1999), persuasive on this point.

On June 23, 2004, Compuware moved for reconsideration of the portion of the June 10 opinion holding that Defendant Moody's qualified for the protections of New York's Press

4

Shield Law, and I denied that motion in my opinion of July 7, 2004.  324 F.Supp.2d 860.  The

motion did not ask for reconsideration of the portion of my June 10 opinion holding that the

standard of actual malice (and not negligence) applied to both the defamation and the breach of

contract counts.

**ANALYSIS**

**I. Motion for Summary Judgment Standard**

       Summary judgment is proper if "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c).  A fact is material only if it might affect the outcome of the case under the

governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505 (1986).

The court must view the evidence and any inferences drawn from the evidence in a light most

favorable to the nonmoving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted), Redding v. St. Eward,

241 F.3d 530, 532 (6th Cir. 2001).  The burden on the moving party is satisfied where there is an

absence of evidence to support the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S.

317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).  The trial court has some discretion to

determine whether the respondent's claim is plausible.  Betkerur v Aultman Hosp. Ass'n, 78

F.3d 1079, 1087-8 (6th Cir. 1996).  See also, Street v. J.C. Bradford & Co., 886 F.2d 1472,

1479-80 (6th Cir. 1989).

## II.  Standards for Negligence and Actual Malice or Reckless Disregard for the Truth

I still believe that the actual malice standard is properly applied to both counts.[4]
However, since I hold that Moody's alleged actions are do not rise to the level of negligence or
of actual malice, I will discuss both standards here.

## A. Actual Malice or Reckless Disregard for the Truth

The question of whether a record supports a finding of actual malice or reckless disregard
for the truth is a question of law that can be decided on summary judgment.  Harte-Hanks
Communications, Inc. v. Connaughton, 491 U.S. 657, 685 (1989) (citing Bose Corp. v.
Consumers Union of United States. Inc., 466 U.S. 485 (1984)).  This standard is a subjective one
that requires evidence of "convincing clarity" of a "high degree of awareness of [...] probable
falsity" on behalf of the author or publisher when writing or checking the article against a
contrary report, such that a defendant publisher in fact "entertained serious doubts" as to the
truth of his publication. 466 U.S. at 498; see also Garrison v. Louisiana, 379 U.S. 64, 73 (1964);
St. Amant v. Thompson, 390 U.S. 727, 731 (1968); Fadell v. Minneapolis Star & Tribune Co.,
425 F.Supp. 1075, 1086 (N.D. Ind. 1976).  However, objective facts may be determinative of
recklessness or malice, and concerns about chilling effects strongly support the grant of

---

[4]Plaintiff argues that my decision to apply the actual malice standard to the contract
count, as opposed to the negligence standard, is in conflict with Cohen v. Cowles Media Co.,
501 U.S. 663 (1991), which held that publishers were subject to general laws and did not have
special protections.  The Cohen decision depended on the finding that the general law was not
being used "to avoid the strict requirements for establishing a libel or defamation claim."  Id. at
671.  On the contrary, in this case, the breach of contract claim is dependent on the truth of the
rating and the care taken by the publisher during the publication process, and it is therefore clear
to me Compuware is hoping to escape the strict requirement of actual malice in the defamation
claim by bringing the contract claim.  The language of Cohen therefore requires me to apply (not
prevents me from applying) First Amendment protections to the contract claim.

summary judgment when such facts show it is warranted.  Fadell, 425 F.Supp. at 1085 (D.C. Ind.

1976) (citing Washington Post Co. v. Keogh, 365 F.2d 965, 967- 8 (U.S. App. D.C. 1966)), aff'd

557 F.2d 107 (7th Cir. 1977); Bay View Packing Co. v. Taff, 543 N.W.2d 522 (Wisc. Ct. App.

1995).

**B. Negligence Standard**

The First Amendment does not prevent states from setting their own standards for

publishers of defamatory falsehoods injurious to private individuals, as long as the standard is

something less than strict liability.  Gertz v. Robert Welch, Inc., 418 U.S. 323, 347 (1974).

Under M.C.L. §600.2911(7), defamation of a private figure requires a showing of negligence.

J & J Const. Co. v. Bricklayers and Allied Craftsmen, Local 1, 468 Mich. 722, 664 N.W.2d 728

(2003).  The negligence standard under Michigan law is understood to measure whether a

defendant's actions were those of a "reasonably careful journalist" or "reasonably careful

publisher."[5]  Michigan Microtech, Inc. v. Federated Publ'ns, Inc., 466 N.W.2d 717, 772 (Mich.

Ct. App. 1991); see also Cousino v. Nowicki, 2004 WL 626835 at *8 (Mich. Ct. App. Mar 30,

2004).

**III.  Effect of Providing the Rating for Plaintiff's Review Prior to Publication**

Even assuming all of Plaintiff's factual allegations are true, the facts regarding

Compuware's review of the rating prior to Moody's publication of it are decisive under either

---

[5]When an individual leads someone to believe something that he or she knows to be false, that is sufficient to show negligence.  In re Thompson, 162 B.R. 748, 772 (Bkrtcy. E.D. Mich.1993).  Cf. Ben-Tech Indus. Automation v. Oakland Univ., 2005 WL 50131 at *4, n. 6 (Mich. Ct. App. Jan. 11, 2005) (No gross negligence when the defendant had no knowledge or reason to suspect that the scenario published was an actual life experience and not a hypothetical).

standard.  The parties agree that Compuware was given a chance to review the rating before it

was published, and that Moody's made a minor factual correction following that review at the

suggestion of Compuware.  The parties agree that the main point raised by Fournier was an

overall unhappiness with the review, but in particular, a dispute about how the outstanding credit

facility (which both parties agree was in existence at that time) was affecting Moody's

evaluation of Compuware.  The parties do not cite any other case in which a publisher gave a

plaintiff a chance to review and correct the publication prior to release, and I have found no legal

precedent.

        Under Michigan law, a person who consents to another's conduct may not assert a claim

in tort for harm that results from that conduct.  M.C.L. §2.116(C)(10); Smith v. Calvary

Christian Church, 462 Mich. 679, 686; 614 N.W.2d 590 (2000).  I hold, therefore, that the pre-

publication review immunized Defendant from a suit in tort over any statements or omissions to

which Compuware did not object.  Although Compuware asserts that Fournier's statement that

the rating as a whole was unjustified means that she found each statement in the entire

publication to be incorrect (Pl.'s Br. at 40), this is an unreasonable inference to draw from her

statement.  By Compuware's own admission, Fournier specifically complained about the

conclusions regarding the existing credit facility.  Compuware does not allege she or any other

Compuware representative made a specific criticism of *any other statement or omission* in the

document, except the recommended deletion of the word "Tivoli."  Therefore, Compuware

assented to the publication of all statements not related to the existing credit facility or the

overall rating, and as a result, the only statements that can be made with actual malice or

negligence are those regarding the credit facility, and the final rating.[6]

Moreover, the fact that Defendant Moody's took the time and care to send the rating to Compuware and to seek its feedback before publication weighs heavily in favor of Defendant when assessing whether Moody's was negligent or acted with actual malice. The lack of other similar factual patterns is presumably an indication that this is an unusually careful way of doing business for a publisher. Compuware argues, however, that the pre-publication review here is in fact evidence of actual malice, because Moody's "best practices" state that issuers should not be informed of rating actions shortly before the weekend. However, I note that the rating was actually not published until Tuesday, Defendant made a point of calling Plaintiff to ensure that the rating had been received, and Defendant did not publish the rating until Plaintiff's comments were received. These are not the actions of a company recklessly disregarding the truth or acting with malice aforethought. Moreover, even the allegedly non-optimal practices here far exceed the requirements of a reasonable publisher or journalist.

Of course, pre-publication review can not completely protect publishers when a plaintiff informs a defendant of the falsity of the publication and a defendant chooses to go ahead with the publication. In this case, however, Compuware fails to demonstrate malice or negligence.

Compuware states that its corporate officer told Moody's "that the downgrade was entirely unjustified given the company's financial position," and that she "told him that Compuware was not going to borrow under the credit facility, had no need for it, and in fact

---

[6]Again, for the purpose of this motion, I assume that the statements in question meet all other standards for a defamation action, e.g., provable falsity. I also note that it is reasonable for a publisher to assume the statements are accurate when the statements are supplied to the source for review and no objection is made.

would terminate the facility that very day if it would make a difference to Moody's." (Pl.'s Br. at 8.) Compuware's Fournier further alleges that the Moody's analyst falsely told her it would not make a difference, and that information made her decide not to terminate the facility. (These are the only responses to the draft rating that Compuware alleges it made to Moody's.)

Even assuming all Plaintiff's statements are true, a reasonable jury could not find that Moody's was negligent or acting with actual malice. Compuware admits it had a large, open credit facility, and admits the facility remained open when the rating was published. No reasonable jury could find that Moody's was reckless or unreasonable by failing to accept Plaintiff's non-binding promises that it would not exercise its right to borrow under that facility. Moreover, even if Moody's analyst lied and told Fournier that closing the facility would not make a difference when such an action would have improved the company's rating, Compuware's decision not to terminate the facility means that *no circumstances changed* in such a way that rendered Moody's knowledge of the truth in conflict with its published analysis of Compuware's current financial status.[7] No reasonable jury could find it was unreasonable or reckless for Moody's to go ahead with the rating when the credit facility was still open.

Finally, having rejected Plaintiff's argument that any statement in the justification for the

---

[7]I note that in both the June 10 opinion and in my opinion on the motion for reconsideration, I found that Moody's did not step outside its newsgathering role to advise clients, including Compuware, on ways to improve the ratings of the financial situations it was evaluating, because Compuware never alleged that it did so. 222 F.R.D. 124, 131 (E.D.Mich. Jun 10, 2004); 324 F.Supp.2d 860 (E.D.Mich. Jul 07, 2004). Now, however, Compuware argues that the *failure* to give advice about how to alter the publication's content through closing a credit facility shows negligence or malice on behalf of the publisher. The analyst's alleged "advice," whether correct or incorrect, is not relevant to the question of either defamation or breach of contract, since Moody's was in the business of publishing ratings, not the business of advising the subjects of those ratings about how to obtain favorable publications.

rating was made in a legally negligent manner, or with actual malice, I turn to the question of whether Moody's rating as a whole was made with either negligence or actual malice. Both sides agree that the explanation for the rating contained a large number of individual statements about Compuware's financial status. For Plaintiff's claim to survive summary judgment, those facts and statements supporting the rating (none of which are legally actionable as defamation under either standard), together with what Moody's knew but did not publish as part of the rating, would have to be so incongruous with the rating itself that a reasonable jury could assume that Moody's knew or should have known the final rating was false.

Statements in support of the rating noted that at least half of Plaintiff's business came from software products for IBM mainframes, and the strained relationship between the two companies challenged Compuware's ability to maintain that business. (Pl.'s Br. in Opposition, Ex. 12, ¶8.) It stated that the competition in the industry was intense, the markets for Plaintiff's products were experiencing a "marked slowdown," and Plaintiff's professional services business was limited in its geographic scope. Even had the rating included some pieces of information more favorable to Compuware, given these statements, a reasonable jury could not find the justification for the rating so incongruous with the rating itself as to show negligence, and they are certainly not the kind of statements that provide convincing, clear evidence of actual malice or a reckless disregard for the truth.

To summarize, Compuware was given the opportunity to review the publication in its entirety before it was released, and had the opportunity to offer corrections, note key omissions, or draw Defendant's attention to erroneous implications. With a minor exception ( the elimination of the word "Tivoli") it did not do so. Although it did specifically object to the

11

overall finding, given the care Moody's took in checking the document, and the fact that its

justification for the rating is not as a matter of law so incongruous as to allow a finding of actual

malice or even negligence, Compuware fails to meet its burden as to either count, under either

standard.

**CONCLUSION**

For the reasons above, I GRANT summary judgment on both claims in favor of

Defendant Moody's.

**IT IS SO ORDERED.**


s/ John Feikens
John Feikens
United States District Judge

Date: May 26, 2005

<table>
<tr><td>PROOF OF SERVICE</td></tr>
<tr><td>I hereby certify that a copy of the foregoing Order was served on the attorneys and/or parties of record on May 26, 2005, by electronic means or first class U.S. Mail.<br><br>s/Carol Cohron<br>Case Manager<br>Honorable John Feikens</td></tr>
</table>

12